# 24-1209(L)

## 24-1200, 24-1210, 24-1213, 24-1218, 24-1223, 24-1360

## In the United States Court of Appeals for the Second Circuit

---

AURELIUS CAPITAL MASTER, LTD., ACP MASTER, LTD., NOVORIVER S.A., 683 CAPITAL PARTNERS, LP, ADONA LLC, EGOZ I LLC, EGOZ II LLC, MASTERGEN, LLC, ERYTHRINA, LLC, AP 2016 1, LLC, AP 2014 3A, LLC, AP 2014 2, LLC, WASO HOLDING CORPORATION,

*Plaintiffs-Appellants*,

and

APE GROUP SPA, ROMANO CONSULTING SPA, ICARO SRL, ELAZAR ROMANO,

*Plaintiff-Appellants-Cross-Appellees*,

v.

REPUBLIC OF ARGENTINA,

*Defendant-Appellee-Conditional-Cross-Appellant.*

---

On Appeal from the United States District Court for the Southern District of New York

---

### FINAL FORM REPLY BRIEF FOR DEFENDANT-APPELLEE-CONDITIONAL-CROSS-APPELLANT THE REPUBLIC OF ARGENTINA

---

[Counsel listed on following page]

Amanda F. Davidoff
Thomas C. White
Elizabeth A. Rose
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500
davidoffa@sullcrom.com

Robert J. Giuffra, Jr.
Sergio Galvis
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

*Attorneys for the Argentine Republic*

# TABLE OF CONTENTS

*Page*

INTRODUCTION................................................................................1

ARGUMENT ......................................................................................2

I.    APE GROUP DID NOT "MAKE" A "CLAIM" AGAINST
      THE REPUBLIC WITHIN THE FIVE-YEAR
      PRESCRIPTION PERIOD. ........................................................2

II.   THE PRESCRIPTION CLAUSE IS NOT SATISFIED BY
      PROVIDING MERE "NOTICE" OF A POTENTIAL CLAIM. ........7

      A.    This Court's Precedent and New York Law Confirm that a
            Prescription Clause, like Section 14 of the Global Security,
            Supersedes the Statute of Limitations. ............................................7

      B.    Ape Group's Other Flawed Arguments Do Not Overcome
            *Ajdler* or Establish that Anything Short of a Lawsuit
            Satisfied the Prescription Clause.................................................13

      CONCLUSION................................................................................18

i

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ajdler* v. *Province of Mendoza*,
   2017 WL 3635122 (S.D.N.Y. Aug. 2, 2017)................................................9, 10

*Ajdler* v. *Province of Mendoza*,
   768 F. App'x 78 (2d Cir. 2019) ................................................................9

*Ajdler* v. *Province of Mendoza*,
   890 F.3d 95 (2d Cir. 2018) ..........................................................*passim*

*Assured Guar. (UK) Ltd.* v. *J.P. Morgan Inv. Mgmt. Inc.*,
   915 N.Y.S.2d 7 (N.Y. App. Div. 2010) ................................................13, 14

*Barner* v. *Jeffersonville-Youngsville Cent. Sch. Dist.*,
   117 A.D.2d 162 (N.Y. App. Div. 1986).................................................9

*Batales* v. *Friedman*,
   41 N.Y.S.3d 275 (N.Y. App. Div. 2016) ..........................................11

*Exxon Mobil Corp. & Affiliated Cos.* v. *Comm'r*,
   689 F.3d 191 (2d Cir. 2012) ................................................................15

*Fortune Limousine Serv., Inc.* v. *Nextel Commc'ns.*,
   826 N.Y.S.2d (N.Y. App Div. 2006) ................................................5

*Freudenthal* v. *County of Nassau*,
   726 N.Y.S.2d 116 (N.Y. App. Div. 2001) ..........................................15

*Gold* v. *Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004) ................................................................6

*Hauer Const. Co.* v. *City of New York*,
   85 N.Y.S.2d 42 (Sup. Ct. App. Term 1948).......................................11

*Hurlbut* v. *Christiano*,
   405 N.Y.S.2d 871 (N.Y. App. Div. 1978) .........................................16

ii

*John J. Kassner & Co.* v. *City of New York*,
46 N.Y.2d 544 (1979) ..................................................................12

*Lavin* v. *Briefly Stated, Inc.*,
2011 WL 1334845 (S.D.N.Y. Mar. 31, 2011)..............................11

*MHR Cap. Partners LP* v. *Presstek, Inc.*,
12 N.Y.3d 640 (2009) ...................................................................4

*Nassau Chapter Civ. Serv. Emps. Ass'n* v. *County of Nassau*,
585 N.Y.S.2d 966 (Sup. Ct. 1992) ..............................................11

*Newmont Mining Corp.* v. *AngloGold Ashanti Ltd.*,
344 F. Supp. 3d 724 (S.D.N.Y. 2018)..........................................11

*Northgate Elec. Corp.* v. *Barr & Barr, Inc.*,
877 N.Y.S.2d 36 (N.Y. App Div. 2009) ........................................5

*Oil & Gas Ventures-First 1958 Fund, Ltd.* v. *Kung*,
250 F. Supp. 744 (S.D.N.Y. 1966) ...............................................16

*Perini Corp.* v. *City of New York*,
18 F. Supp. 2d 287 (S.D.N.Y. 1998).........................................4, 5

*Stonewall Contracting Corp.* v. *Long Island Rail Rd. Co.*,
129 N.Y.S.3d 433 (N.Y. App. Div. 2020) .....................................12

*This is Me, Inc.* v. *Taylor*,
1996 WL 20745 (S.D.N.Y. Jan. 17, 1996).....................................15

*Vista Outdoor, Inc.* v. *Reeves Family Tr.*,
725 F. App'x 17 (2d Cir. 2018) .....................................................5

*Wechsler* v. *HSBC Bank USA, N.A.*,
674 F. App'x 73 (2d Cir. 2017) ....................................................12

*Windham Solid Waste Mgmt. Dist.* v. *Nat'l Cas. Co.*,
146 F.3d 131 (2d Cir. 1998) ..........................................................4

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)...............................................16

N.Y. C.P.L.R. § 201 ....................................................................9, 12, 13

## INTRODUCTION

As the Republic explained in its response and opening brief, the district court correctly granted judgment to the Republic because Plaintiffs failed to comply with the contractual requirements to assert their claims under the Securities' No-Action Clause. This Court should therefore affirm the judgment on that ground. But, in the event it does not, this Court should affirm the judgment dismissing Ape Group's claims on the alternative ground raised on the Republic's conditional cross-appeal: Ape Group's claims are untimely under Section 14 of the Global Security (the "Prescription Clause").

By its terms, the Prescription Clause provides that "[a]ll claims" against the Republic "shall be prescribed" unless they have been "made within five years . . . or a shorter period if provided by law" of any payment first becoming due. J.A. 779 § 14.[1] Ape Group does not dispute that this five-year period

---

[1] District court materials cited in the joint appendix ("J.A."), sealed joint appendix ("S.J.A."), and special appendix ("S.A.") are from the dockets in *Aurelius Capital Master, Ltd.* v. *The Republic of Argentina*, No. 1:19-cv-00351-LAP (S.D.N.Y.), *ACP Master, Ltd.* v. *The Republic of Argentina*, No. 1:19-cv-10109-LAP (S.D.N.Y.), *683 Capital Partners, LP* v. *The Republic of Argentina*, No. 1:19-cv-10131-LAP (S.D.N.Y.), *Adona LLC et al.* v. *The Republic of Argentina*, No. 1:19-cv-11338-LAP (S.D.N.Y.), and *Ape Group SpA* v. *The Republic of Argentina*, No. 11:20-cv-10409-LAP (S.D.N.Y.). All defined terms are the same as from the Republic's response and opening brief.

expired on December 15, 2019 (Reply 41) and that Ape Group filed its lawsuit nearly a year later on December 10, 2020, J.A. 2845.

But Ape Group contends that the district court rightly concluded that (i) the Prescription Clause did not require Ape Group to actually commence a lawsuit against the Republic, and (ii) that Ape Group had "made" a claim when its lawyer emailed the Republic's outside counsel on related matters within the prescription period. Reply 41, 47. Both holdings are wrong as a matter of law.

## ARGUMENT

## I. APE GROUP DID NOT "MAKE" A "CLAIM" AGAINST THE REPUBLIC WITHIN THE FIVE-YEAR PRESCRIPTION PERIOD.

The plain language of the Prescription Clause bars all claims "unless made within five years." J.A. 779 § 14. Ape Group contends it satisfied this requirement by sending the Republic's outside counsel on other matters three emails in November 2019. Reply 47. Specifically, Ape Group's counsel sent an email on November 4, 2019, saying that Ape Group's principal "ha[d] become aware of" cases commenced by others and "wishe[d] to preserve his rights while th[o]se litigations proceed without having to bring a suit against Argentina." J.A. 2898. In that email, Ape Group's counsel wrote to "inquire whether Argentina would be willing to enter into a tolling agreement." *Id.*

But the Republic's outside counsel was not yet being instructed on the Ape Group matter and was not authorized to respond.

Ape Group's counsel followed up with the Republic's outside counsel on November 16, 2019, and again on November 26:

> I haven't received a response to my inquiry. If I don't have some type of response by December 10th, I will advise the client that he needs to bring a suit to preserve his rights.

*Id.* Instead of filing its lawsuit within the five-year prescription period (*i.e.*, by December 15, 2019), Ape Group waited until December 10, 2020, to finally file its lawsuit. J.A. 2845.

As explained in the Republic's response and opening brief (at 80–82) and in the next section of this brief, the Prescription Clause required the commencement of a lawsuit within five years. By any measure though, the emails from Ape Group's counsel clearly do not amount to "making" a "claim" under any interpretation of the Prescription Clause. Republic Br. 78–80.

The very emails that Ape Group relies on confirm its failure to make a claim. Exploring a willingness to enter into a tolling agreement and then *threatening* to sue to "preserve" one's rights does not constitute "making" a "claim"—even under the district court's interpretation of the Prescription Clause, which requires "the assertion of a right to payment." S.A. 100. As this

3

Court has recognized, "an accusation that wrongdoing occurred is not by itself a claim, nor is a naked threat of a future lawsuit, or a request for information or an explanation." *Windham Solid Waste Mgmt. Dist.* v. *Nat'l Cas. Co.*, 146 F.3d 131, 134 (2d Cir. 1998).  Instead, "[a] claim requires, in short, a specific demand for relief."  *Id.*  Nothing in Ape Group's emails satisfied this requirement.

There is more.  Ape Group followed the wrong procedure to "ma[ke]" a "claim" under the district court's interpretation of the Prescription Clause. Section 12 of the Global Security requires all "notices to the Republic with respect to the Securities" to be sent to the Ministry of Economy in Buenos Aires—not to an outside law firm acting for the Republic on discrete litigation. J.A. 779 § 12.  New York law is clear that "[e]xpress conditions must be literally performed; substantial performance will not suffice." *MHR Cap. Partners LP* v. *Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009).  Ape Group concedes as much but claims that this rule only applies where contracts "themselves explicitly require[] strict compliance."  Reply 48.  This is wrong, as confirmed by Ape Group's cited cases.  In *Perini Corp.* v. *City of New York*, the court did not enforce strict compliance merely because of the underlying contractual language, and in fact emphasized that "'[a]n enshrined principle' of New York

4

law requires strict compliance with notice provisions in general." 18 F. Supp. 2d 287, 290, 294 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 901 (2d Cir. 1999). And in *Northgate Electric Corp.* v. *Barr & Barr, Inc.*, the contractual language did not explicitly require strict compliance, but rather (just like the Prescription Clause) provided that if a party failed to comply with its terms "the claim is waived." 877 N.Y.S.2d 36, 37–38 (N.Y. App. Div. 2009).

Citing two cases, Ape Group also claims that it is excused from compliance because the Republic "does not claim the absence of actual notice or prejudice." Reply 47–48 (quoting *Fortune Limousine Serv., Inc.* v. *Nextel Commc'ns*, 826 N.Y.S.2d 392, 395 (N.Y. App. Div. 2006); *Vista Outdoor, Inc.* v. *Reeves Family Tr.*, 725 F. App'x 17, 23 (2d Cir. 2018)). Neither case saves Ape Group. *Fortune Limousine Services* addressed a purchase option for which "no notice was ever received," and the court thus did not evaluate any showing of prejudice or whether to enforce strict compliance with the notice requirement. 826 N.Y.S.2d at 395. In *Vista Outdoor, Inc.* v. *Reeves Family Trust*, after a plaintiff complied with a contractual requirement to give notice of a closing balance sheet, the court excused the plaintiff from providing a revised notice. 725 F. App'x at 23. The case thus does not deal with the

5

complete failure to adhere to notice requirements, much less in the context of preserving claims.

Finally, Ape Group says that the Prescription Clause "should be applied narrowly if at all" because it was "inadequately disclosed" in the Luxembourg Addendum to the Prospectus Supplement that its principal, Elazar Romano, read instead of the Global Security. Reply 49–50. But it is black-letter law that "a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" *Gold* v. *Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004).

In any event, the very prospectus addendum that Mr. Romano claims to have read (Reply 49) expressly provides that it only "briefly summarizes the principal terms" of the Securities and directs investors to "read the applicable . . . agreement," publicly available with the SEC, "before making [an] investment decision." J.A. 3283; *see also* J.A. 2878 (conceding that the Global Security was available through the SEC). Ape Group also concedes that "[i]n the fall of 2019, Mr. Romano learned of Aurelius Capital's lawsuit against Argentina," which attached the Global Security (containing the Prescription Clause) as an exhibit to the complaint. J.A. 2880. Ape Group knew that the prescription period was about to run but chose to ignore it.

6

## II.    THE PRESCRIPTION CLAUSE IS NOT SATISFIED BY PROVIDING MERE "NOTICE" OF A POTENTIAL CLAIM.

The district court also erred in holding that an "assertion of a right to payment" was enough to satisfy the Prescription Clause in the first place.  S.A. 100–01.  Ape Group's counsel acknowledged as much when he recognized in his emails that his client "*needs to bring a suit to preserve his rights*."  J.A. 2898 (emphasis added).  This Court's decision in *Ajdler* v. *Province of Mendoza*, 890 F.3d 95, 98–100 (2d Cir. 2018), and other New York cases confirm that contractual limitations periods, like the Prescription Clause in the Global Security, supersede the applicable statute of limitations (*infra* Section A).  Ape Group's arguments against this clear rule are meritless (*infra* Section B).

### A.    This Court's Precedent and New York Law Confirm that a Prescription Clause, like Section 14 of the Global Security, Supersedes the Statute of Limitations.

Ape Group does not dispute that this Court addressed a nearly identical contractual limitations provision in *Ajdler*.  The contractual language in *Ajdler* provided that "[a]ll claims against [the issuer] for payment of principal of or interest . . . on or in respect of the Bonds shall be prescribed unless made within four years from the date on which such payments first became due." 890 F.3d at 97.  This Court held that this language "superseded" the otherwise

7

applicable six-year statutory limitations period, such that "[t]he Indenture's [f]our-year [l]imitations [p]eriod [d]etermine[d] the [t]imeliness of [the plaintiff's] [c]laims." *Id.* at 98–99. Because the plaintiff in *Ajdler* did not file suit within the applicable four-year prescription period, this Court rightly dismissed his claim as "plainly untimely." *Id.* at 97–100. The language in the Global Security is materially identical: it prescribes "[a]ll claims against the Republic for any amounts due hereunder (including Additional Amounts) . . . unless made within five years from the date on which such payment first became due, or a shorter period if provided by law." J.A. 779 § 14. Thus, under *Ajdler*, Ape Group's untimely claims must be dismissed. Republic Br. 81–82.

To try to avoid *Ajdler*, Ape Group says that (i) "the plaintiff in that case didn't claim to have provided notice within the prescription period [so] the issue of whether notice would have sufficed wasn't raised," and (ii) "*Ajdler's* discussion of prescription was dicta." Reply 45. But neither end-run works.

*First*, that the plaintiff in *Ajdler* did not provide notice within the prescription period is irrelevant because both this Court and the district court in *Ajdler* agreed that the nearly identical prescription clause—requiring "claims" to be "made" within four years—had the effect of shortening New York's statute of limitations. *Ajdler*, 890 F.3d at 99 ("[W]here, as here, 'a

8

shorter time is prescribed by written agreement,' both statute and controlling precedent instruct that the shorter period controls as long as it is reasonable.") (quoting N.Y. C.P.L.R. § 201). And statutes of limitations require the commencement of litigation—"filing of a notice of claim . . . neither tolls the Statute of Limitations nor begins anew the time within which review can be sought." *Barner* v. *Jeffersonville-Youngsville Cent. Sch. Dist.*, 117 A.D.2d 162, 166 n.1 (N.Y. App. Div. 1986). In its opinion following certification to the New York Court of Appeals, this Court again noted that "[plaintiff's] claim is time-barred" because "[plaintiff] . . . did not file this action until . . . well outside the relevant four-year limitations period." *Ajdler* v. *Province of Mendoza*, 768 F. App'x 78 (2d Cir. 2019).

*Second*, this Court's interpretation of the prescription clause in *Ajdler* was not "dicta" simply because of the district court's alternative holding that the "claims at issue [] were already barred by the statute of limitations." Reply 45. The primary holding of the district court was that the "prescription provision . . . provide[d] for a shorter limitations period than that provided by statute" and that, as a result, "all of [plaintiff's] claims are time-barred." *Ajdler* v. *Province of Mendoza*, 2017 WL 3635122, at *7–8 (S.D.N.Y. Aug. 2, 2017). That is why the district court then noted, "[e]ven if, *for the sake of*

9

*argument*, the Court were to apply the six-year limitations period, Ajdler's claims . . . would remain time-barred." *Id.* at \*8 (emphasis added).

On appeal, this Court specifically affirmed the district court's primary holding that a limitations period shorter than New York's statute of limitations had been "prescribed by written agreement," and thus controlled the timeliness of the plaintiff's claims. *Ajdler*, 890 F.3d 95 at 99–100 ("the timeliness of [plaintiff's] claims is properly considered by reference to the Indenture's four-year limitations period"). This Court did not even address the district court's conclusion that the six-year statutory limitations period would also bar Ajdler's claims.

The Global Security's language here is even clearer than the clause in *Ajdler*. Section 14 states: "All claims against the Republic . . . shall be prescribed unless made within five years . . . *or a shorter period if provided by law*." J.A. 779 § 14 (emphasis added). The parties thus contracted for the prescription period to supersede longer limitations periods—like New York's default six-year limitations period—and act as an outer limit for claims unless a shorter limitations period is "provided by law." Ape Group has altogether failed to address this language, much less explain how it could refer to

10

anything other than the applicable statutory limitations period. *See* Republic Br. 80–82.

Ape Group leans heavily on out-of-context statements that contractual limitations periods are disfavored or should be interpreted strictly. Reply 41–42. Ape Group's leading case is *Hauer Const. Co.* v. *City of New York*, 85 N.Y.S.2d 42 (Sup. Ct. App. Term 1948), a nearly 70-year-old decision that does not even support its position. In *Hauer*, the court did not enforce "the contractual period of limitation" because it concluded that period "ha[d] not effectively run" due to "defendant['s] fail[ure] to comply with the statutory requirements of the Administrative Code [of New York]." *Id.* at 44–45.[2]

---

[2] The other cases cited by Ape Group (Reply 42–43) are not on point. The court in *Newmont Mining Corp.* v. *AngloGold Ashanti Ltd.* noted that the language "no claim may be brought" is "plain language" showing an intent to shorten the statute of limitations, and "[t]hat the contract failed to use the magic words 'statute of limitations' is of no consequence." 344 F. Supp. 3d 724, 749 (S.D.N.Y. 2018). In *Lavin* v. *Briefly Stated, Inc.*, the court rejected the notion that the plaintiff could be "bound by a unilateral modification of the applicable statute of limitations that became effective after he left the Defendant's employ." 2011 WL 1334845, at *6 (S.D.N.Y. Mar. 31, 2011). *Nassau Chapter Civ. Serv. Emps. Ass'n* v. *County of Nassau* dealt with a collective bargaining agreement that discussed the time to file "grievances" (a labor term of art) but said nothing indicating an intent to limit the statute of limitations for judicial remedies. 585 N.Y.S.2d 966, 971 (Sup. Ct. 1992). *Batales* v. *Friedman* simply stated that the parties' intent must be "clear and unambiguous"—as it is here—and found that the clause at issue shortened the statute of limitations. 41 N.Y.S.3d 275, 277 (N.Y. App. Div. 2016).

More recent pronouncements of New York law are clear that parties may shorten the limitations period by contract, and that such agreements must be enforced "[a]bsent proof that the contract is one of adhesion or the product of overreaching, or that [the] altered period is unreasonably short." *Stonewall Contracting Corp.* v. *Long Island Rail Rd. Co.*, 129 N.Y.S.3d 433, 436 (N.Y. App. Div. 2020); N.Y. C.P.L.R. § 201 ("An action . . . must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement.").

Indeed, New York courts have held that a contractual provision shortening a limitations period "does not conflict with public policy but, in fact, 'more effectively secures the end sought to be attained by the statute of limitations.'" *John J. Kassner & Co.* v. *City of New York*, 46 N.Y.2d 544, 551 (1979) (quoting *Ripley* v. *Aetna Ins. Co.*, 30 N.Y. 136, 163 (1864)). The only restriction that New York courts have placed on the ability to contract for a shortened limitations period is that such period be "reasonable." *Id.* Ape Group does not attempt to argue that the five-year limitations period is unreasonable in this instance, nor could it. *See Wechsler* v. *HSBC Bank USA, N.A.*, 674 F. App'x 73, 75 (2d Cir. 2017) ("New York courts have found one-year limitations clauses to be reasonable.").

12

Ape Group observes that some civil law jurisdictions permit notice, rather than filing a claim, to "toll" statutory prescription periods. Reply 46. But the parties agreed to have New York law govern the Global Security. J.A. 779 § 16. New York law does not allow a limitations period to be tolled by mere "notice" of a claim. N.Y. C.P.L.R. § 201 ("[a]n action . . . must be commenced within the time specified").

### B. Ape Group's Other Flawed Arguments Do Not Overcome *Ajdler* or Establish that Anything Short of a Lawsuit Satisfied the Prescription Clause.

Ape Group insists the Prescription Clause cannot mean what it says by twisting the plain meaning of two words ("claims" and "made") and then misreading other provisions of the Global Security. Reply 42–45.

1. To try to escape this Court's interpretation of the nearly identical prescription clause in *Ajdler*, Ape Group asserts that the Prescription Clause's use of the word "claim" is not enough to shorten a statute of limitations because it does not "make this [intent] clear." Reply 42. But New York courts have held that the term "claim" is routinely used to refer to lawsuits, including when interpreting New York's statutes of limitations. *See, e.g.*, *Assured Guar. (UK) Ltd.* v. *J.P. Morgan Inv. Mgmt. Inc.*, 915 N.Y.S.2d 7, 15 (N.Y. App. Div. 2010) ("Such an agreement [to shorten the statute of limitations] bars tort

13

*claims*—including *claims* for gross negligence—as well as contract *claims*")
(emphasis added); Republic Br. 80–82. Indeed, in Plaintiffs' own briefing
before this Court, they have used the word "claim" on numerous occasions to
refer to litigation. *See, e.g.*, Pls.' Opening Br. 11, 13, 17, 19–20, 69, 91.

In its attempt to distinguish making a "claim" from filing a lawsuit, Ape
Group says that the Global Security "uses other terms to refer to lawsuits,
including 'suit, action or proceeding,' 'action, suit or proceeding,' 'action or
proceeding,' 'actions,' 'actions or proceedings,' 'legal action or proceedings,'
'suit,' 'proceedings,' and 'legal or judicial process.'" Reply 43–44. But that
laundry list simply reflects that the Global Security uses a variety of different
terms to refer to court proceedings, and "claims" is one among many. In fact,
the Global Security's Trust Indenture uses the term "claims" as a synonym for
"action or proceedings," *i.e.*, expressly to refer to litigation. *See* J.A. 660
§ 4.4(d) ("All rights of action and of asserting *claims* under this Indenture or
the Debt Securities . . . may be enforced by the Trustee . . . on any trial or other
proceedings relative thereto, and *any such action or proceedings* instituted by
the Trustee shall be brought in its own name as trustee . . .") (emphasis added).

Ape Group tries to distinguish the caselaw equating "claim" with
"lawsuit" by arguing that the clauses in those cases used the word "bring"

14

rather than "make." Reply 44. That is a distinction without a difference. This Court in *Ajdler* has already found that a prescription clause with the exact same "made" and "claims" formulation shortened the statute of limitations. 890 F.3d at 98–100. And this Court regularly uses "make a claim" to refer to litigation. *See, e.g.*, *Exxon Mobil Corp. & Affiliated Cos.* v. *Comm'r*, 689 F.3d 191, 201–02 (2d Cir. 2012) (equating "sued" with "make a claim"); *see also Freudenthal* v. *County of Nassau*, 726 N.Y.S.2d 116, 117 (N.Y. App. Div. 2001) (equating "make a claim" with file a lawsuit).

By contrast, none of Ape Group's cases actually shows that the language "make" a "claim" means something less than filing a lawsuit. Reply 42–43. In *This is Me, Inc.* v. *Taylor*, this language expressly required a plaintiff to "present such claim" to someone *other than a court of law*—namely, to "the Producer" or to "Equity," an "organization that hears [actors'] disputes," which was "not [] a court." 1996 WL 20745, at *1–2 & n.2 (S.D.N.Y. Jan. 17, 1996). The court emphasized that the provision "contain[ed] no language indicating that Plaintiff waived or limited any of its rights to pursue any judicial remedies." *Id.* at *2. Here, the clause expressly "prescribed" claims, and thus refers to "[t]he extinction of a title or right," *Prescription*, Black's

15

Law Dictionary (11th ed. 2019), which necessarily includes extinguishing legal remedies.

Ape Group's other cases are similarly off point. In *Oil & Gas Ventures-First 1958 Fund, Ltd.* v. *Kung*, the court considered a provision requiring that "claims for discrepancies disclosed by periodic audits be presented within two years of an audit." 250 F. Supp. 744, 753 (S.D.N.Y. 1966). But an agreement that a limited partner would present "claims for discrepancies" in an audit of its general partner clearly suggests out-of-court negotiation, not a lawsuit. And in *Hurlbut* v. *Christiano*, a nursing home seller merely agreed that its regulatory-compliance representations and warranties would "survive the closing for a period of three (3) years." 405 N.Y.S.2d 871, 873 (N.Y. App. Div. 1978). That provision *extended by three years* the time when a claim based on violations existing at closing would accrue; it contained "nothing from which a shortened period of limitations [could] be inferred." *Id.*

2.    Ape Group also misconstrues Section 2(e) of the Global Security, a provision that governs the Trustee's use of and responsibility for funds paid to the Trustee by the Republic.

That provision contains three parts. *First*, "[a]ll money paid to the Trustee pursuant to this Security shall be held by it in trust exclusively for

16

itself and the Holders." J.A. 771 § 2(e). *Second*, with one exception, Holders may "look only to the Trustee for any payment to which the Holders may be entitled." *Id. Third*, the one exception is that if funds received by the Trustee go unclaimed for five years, the Trustee must return them to the Republic upon request, at which point Holders "may thereafter look only to the Republic for any payment." *Id.*

Ape Group claims that "by allowing holders to seek payment from Argentina after the five-year prescription period, Section 2(e) demonstrates that the Prescription Clause is not, as Argentina asserts, a contractually shortened statute of limitations." Reply 45. But that construction is wrong.

Section 2(e) provides that once funds previously paid to the Trustee are returned to the Republic, Holders may no longer look to the Trustee for those funds. This language absolves the Trustee of any further involvement once it no longer has the funds, but it does not create any rights against the Republic, much less "allow[] holders to seek payment from Argentina after the five-year prescription period." Reply 45.

17

## CONCLUSION

This Court can affirm the district court's judgment against Ape Group on the alternative ground that Ape Group's claims are untimely under the Prescription Clause.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio Galvis
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

Amanda F. Davidoff
Thomas C. White
Elizabeth A. Rose
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500

*Attorneys for the Argentine Republic*

February 14, 2025

18

## CERTIFICATE OF COMPLIANCE

This Brief complies with Federal Rule of Appellate Procedure 32(a) and the Court's order of June 25, 2024, because it contains 3,916 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This Brief also complies with the requirements of Federal Rule of Appellate Procedure 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

February 14, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2025, I filed the foregoing Brief with the Clerk of Court for the U.S. Court of Appeals for the Second Circuit through the ACMS system. I certify that all participants in these cases are registered ACMS users and that service will be accomplished by the ACMS system.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

February 14, 2025