24-1209 (L); 24-1200(L)
*Argentine GDP-Linked Securities Litigation*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of July, two thousand and twenty-five.

PRESENT: Steven J. Menashi,
Alison J. Nathan,
  *Circuit Judges*,
Katherine Polk Failla,
  *District Judge*.[*]

_____

AURELIUS CAPITAL MASTER, LTD., ACP MASTER, LTD., NOVORIVER S.A., 683 CAPITAL PARTNERS, LP, ADONA LLC, EGOZ I LLC, EGOZ II LLC, MASTERGEN, LLC, ERYTHRINA, LLC, AP 2016 1, LLC, AP 2014 3A, LLC, AP 2014 2, LLC, WASO HOLDING CORPORATION,

  *Plaintiffs-Appellants*,

  and

---

[*] Judge Katherine Polk Failla of the U.S. District Court for the Southern District of New York, sitting by designation.

APE GROUP SPA, ROMANO CONSULTING SPA, ICARO SRL, ELAZAR ROMANO,

 *Plaintiffs-Appellants-Cross-Appellees*,

v.

REPUBLIC OF ARGENTINA,

 *Defendant-Appellee*.[†]

Nos. 24-1209(Lead),
   24-1210(Con),
   24-1213(Con),
   24-1218(Con),
   24-1223(Con),
   24-1200(Lead)
   24-1360(XAP)

_____

*For Plaintiffs-Appellants*:   ROY T. ENGLERT, JR. Kramer Levin Naftalis & Frankel LLP, Washington, DC (Matthew M. Madden, Zachary N. Ferguson, Paul Brzyski, Kramer Levin Naftalis & Frankel LLP, Washington, DC; Michael R. Huston, Matthew M. Riccardi, H. Rowan Gaither, IV, Jacob J. Taber, Perkins Coie LLP, New York, New York; Matthew S. Salerno, Michael E. Bern, Latham & Watkins LLP, New York, New York; Javier Bleichmar, Evan A. Kubota, Bleichmar Fonti & Auld LLP, New York, New York; Lawrence S. Robbins, Edward A. Friedman, Daniel B. Rapport, Michael S. Palmieri, Friedman Kaplan Seiler Adelman & Robbins LLP, New York, New York, *on the brief*).

---

[†] The Clerk of Court is directed to amend the caption as set forth above.

| | |
|---|---|
| *For Plaintiffs-Appellants-Cross-Appellees:* | Eric Joseph Grannis, Law Offices of Eric J. Grannis, New York, New York. |
| *For Defendant-Appellee*: | ROBERT J. GIUFFRA, JR., Sullivan & Cromwell LLP, New York, New York (Sergio Galvis, Sullivan & Cromwell LLP, New York, New York; Amanda F. Davidoff, Thomas C. White, Elizabeth A. Rose, Sullivan & Cromwell LLP, Washington, DC, *on the brief*). |

Appeal from a judgment of the United States District Court for the Southern District of New York (Preska, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

As part of a debt restructuring, Defendant-Appellee the Republic of Argentina issued a series of GDP-linked securities in 2005 and 2010. Under the terms of the securities, Argentina must make payments to securities holders if the Argentine economy meets certain defined benchmarks in any given year. Payment is required when, among other things, Argentina's economy surpasses a minimum threshold. Argentina made multiple payments on the securities after years of positive economic performance from 2005 to 2012. But after Argentina changed the way it calculated real GDP, Argentine officials claimed that the economy did not meet the required benchmarks in 2013 and that no payment was due. The plaintiffs-appellants are beneficial owners of the securities who claim that Argentina was required to make a payment for 2013. After discovery, the district court granted summary judgment to Argentina because the plaintiffs failed to comply with a No-Action Clause before bringing suit.

On appeal, the plaintiffs argue that the No-Action Clause does not bar their claims. The plaintiffs also argue that Argentina violated the terms of the securities

3

and that it is required to make a payment based on the country's economic performance in 2013. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

# I

The GDP-linked securities have two governing documents: the Indenture—which governs different types of debt securities, including the GDP-linked securities—and the Global Security, which applies specifically to the GDP-linked securities.[1] Section 4.8 of the Indenture—the No-Action Clause—limits the rights of holders to bring lawsuits related to the securities:

> Except as provided in this Section 4.8 and Section 4.9 of this Indenture, no Holder of any Debt Securities of any Series shall have any right by virtue of or by availing itself of any provision of this Indenture or of the Debt Securities of such Series to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or of the Debt Securities, or for any remedy hereunder or under the Debt Securities.

J. App'x 661-62. There are two exceptions to this general prohibition. First, Section 4.8 generally allows for lawsuits after a holder gives notice to a named Trustee and the Trustee declines to bring an action. Second, Section 4.9 allows holders to sue to recover principal or interest owed on a debt security.

The Global Security also contains a No-Action Clause that largely mirrors the Indenture. Section 11 of the Global Security generally prohibits lawsuits related to the GDP-linked securities:

> Except as provided in Section 4.9 of the Indenture with respect to the right of any Holder of a Security to enforce the payment of any amounts due hereunder on any Payment Date (as this Security may

---

[1] Following the parties, we rely on the 2005 versions of the Indenture and the Global Security. Any differences between the 2005 and 2010 versions of these documents are not relevant to the issues in this appeal.

4

>be amended or modified pursuant to Paragraph 22), no Holder of a Security shall have any right by virtue of or by availing itself of any provision of the Indenture, the GDP-Linked Securities Authorization or the Securities to institute any suit, action or proceeding in equity or at law upon or under or with respect to the Indenture, the GDP-Linked Securities Authorization or the Securities, or for any other remedy hereunder or under the GDP-Linked Securities Authorization or the Indenture.

*Id.* at 778. As with the Indenture, the Global Security provides an exception to this bar when a holder gives notice to the Trustee, and it refers back to the Indenture's additional exception for suits to recover principal and interest.

Taken together, the terms of the securities bar suits by holders unless the holders (1) comply with the notice provisions, or (2) file suit to recover principal or interest. It is undisputed that the plaintiffs did not comply with the notice provisions outlined in the Indenture or the Global Security before filing suit in this case. But the plaintiffs argue that the suit should nevertheless proceed for any of three reasons. First, the plaintiffs contend that the suit falls under the second exception because it seeks principal or interest. Second, the plaintiffs contend that the Global Security creates a third exception for suits to recover payments owed under the GDP-linked securities. Third, the plaintiffs contend that Argentina forfeited any defense that the plaintiffs failed to comply with the No-Action Clause. We disagree with each of the contentions.

### A

First, the plaintiffs argue that the No-Action Clause does not bar this suit because the payments owed under the Global Security constitute principal or interest. That is incorrect.

Section 11 of the Global Security generally prohibits lawsuits related to the GDP-linked securities "[e]xcept as provided in Section 4.9 of the Indenture." *Id.* at 778. That provision allows a holder to sue for "payment of the principal of and interest on its Debt Security." *Id.* at 662. Neither the Global Security nor the

5

Indenture provides its own definition of "principal" or "interest." In its ordinary meaning, "principal" refers to "[t]he amount of a debt." *Principal*, Black's Law Dictionary (8th ed. 2004). It is the "main or capital sum invested or lent, and yielding interest or income." *Principal*, Oxford English Dictionary (March 2025). "Interest" refers to "compensation … for the use or detention of money," especially "the amount owed to a lender in return for the use of borrowed money." *Interest*, Black's Law Dictionary (8th ed. 2004).

Payments owed on the GDP-linked securities are neither principal nor interest. Unlike principal, the payments do not reflect a debt owed to the plaintiffs. In fact, the Global Security does not guarantee *any* payments to a holder of the securities. Payment turns on the performance of the Argentine economy. If the economy fails to meet certain benchmarks, the plaintiffs are entitled to no payments. For similar reasons, payments on the securities cannot constitute interest. Payments are not guaranteed, are not owed in compensation for the use of the plaintiffs' funds, and are not calculated as a percentage of money invested or lent. The first page of the Global Security confirms that any payments are "contingent" and that "holders of this security are not entitled to receive principal in the amount of, or interest based on, [the] notional amount" of the security. J. App'x 761 (capitalization omitted). Because the contingent payments allegedly due to holders of the GDP-linked securities do not constitute principal or interest, the plaintiffs cannot maintain this suit under the second exception to the No-Action Clause.

## B

Second, the plaintiffs argue that the Global Security allows this suit because it creates a third exception to the No-Action Clause. Section 11 of the Global Security generally prohibits lawsuits by holders "[e]xcept as provided in Section 4.9 of the Indenture with respect to the *right of any Holder of a Security to enforce the payment of any amounts due hereunder* on any Payment Date (as this Security may be amended or modified pursuant to Paragraph 22)." *Id.* at 778 (emphasis added).

6

Focusing on the italicized language, the plaintiffs claim that Section 11 creates an additional exception to the No-Action Clause for suits to recover any money owed under the GDP-linked securities.

While there is some force to the plaintiffs' reading of the "with respect to" clause in Section 11, that reading cannot be reconciled with the rest of Section 11, the Global Security, or the Indenture. As a result, the plaintiff's reading "strains the contract language beyond its reasonable and ordinary meaning." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (alteration omitted) (quoting *Bethlehem Steel Co. v. Turner Const. Co.*, 2 N.Y.2d 456, 459 (1957)).

The Global Security bars any suit or proceeding "[e]xcept as provided in Section 4.9 of the Indenture." J. App'x 778. And Section 4.9 of the Indenture protects the right of holders to bring claims only for principal and interest. It does not create a right to sue for contingent payments that may be owed under the GDP-linked securities because suits for those payments are not claims for principal or interest. By referencing the exception for principal or interest, the Global Security does not covertly generate an additional exception for an entirely different type of claim. If the plaintiffs' reading were correct, the reference to Section 4.9 would be both superfluous and contradictory. It would be superfluous because the italicized language would guarantee a new right not covered by Section 4.9 and the reference would be unnecessary. It would be contradictory because the Global Security's carveout would authorize suits only as "provided in Section 4.9" but also suits that go beyond those described in Section 4.9. We cannot read the italicized language as effectively canceling the reference to the limited exception for principal or interest that immediately precedes it. The plaintiffs' interpretation cannot overcome this fatal flaw.

The plaintiffs argue that limiting the Global Security's exception to suits for principal or interest would render superfluous the remaining language of Section 11. As we have explained, suits for payments under the GDP-linked securities are not suits to recover principal or interest. The plaintiffs explain that if the GDP-

7

linked securities do not generate an entitlement to principal or interest, it would not make sense for the Global Security to create an exception for suits that seek principal or interest. But the Global Security's reference to Section 4.9 recognizes that a general provision from the Indenture—which covers an array of securities, including traditional bonds—applies to the GDP-linked securities. Because the exception is not specific to the GDP-linked securities, it does not become superfluous if it has limited application to one type of security. And it is not superfluous even as applied to the GDP-linked securities. The Global Security references the right to pursue principal or interest immediately before recognizing that the Global Security "may be amended or modified." *Id.* at 778. So it is possible that the Global Security could be modified to allow, for example, a delayed payment that would entitle each holder to the payment amount plus interest to account for the delay. Or the parties might even agree to some kind of settlement of debts that involves the return of principal. It is not superfluous for the Global Security to confirm that under such circumstances Section 4.9 would allow a holder to sue for principal or interest without first meeting the notice requirements.

The plaintiffs' interpretation would require us to understand a brief gloss on Section 4.9 of the Indenture to generate an entirely unique exception to the No-Action Clause that Section 4.9 does not envision. The interpretation that the district court adopted, by contrast, treats the cross-reference to Section 4.9 as incorporating Section 4.9 even if that brief cross-reference will not necessarily play a significant role in the life of a GDP-linked security. We conclude that the text, context, and structure of the two documents favor the district court's reading. As a result, the plaintiffs cannot maintain this suit under a proposed third exception to the No-Action Clause. Because the plaintiffs failed to comply with the notice provisions and this suit does not seek to recover principal or interest, the No-Action Clause bars the suit.

## C

Third, the plaintiffs argue that even if the No-Action Clause would otherwise bar this suit, the clause should not apply in this case because Argentina failed to raise this defense early in the litigation. In turn, Argentina argues that the plaintiffs forfeited this timeliness objection by not raising it before the district court. We reject both arguments.

The rules of forfeiture and waiver are "prudential, not jurisdictional, and we have discretion to consider waived arguments." *Dean v. Blumenthal*, 577 F.3d 60, 67 n.6 (2d Cir. 2009) (internal quotation marks and alteration omitted). "We have exercised this discretion where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding." *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004). The scope of the No-Action Clause and whether it bars this suit is a purely legal question of contract interpretation, not a fact-sensitive issue in need of additional discovery.

Moreover, the parties addressed the scope of the No-Action Clause before the district court, the district court resolved the suit on this exact ground, and the parties have briefed the question on appeal to this court. Under these circumstances, we will not ignore a legal issue that "the district court squarely addressed." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 421 (2d Cir. 2015); *see also Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (concluding that the district court did not abuse its discretion by considering arguments first raised in the defendants' summary judgment reply papers). We will consider an issue "if it was 'pressed or passed upon below,'" meaning that the issue "fairly appears in the record as having been raised or decided." *United States v. Harrell*, 268 F.3d 141, 146 (2d Cir. 2001) (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)). There is no question that the issue here meets that standard.

## II

The plaintiffs ask us to resolve the merits of their claims and to decide whether Argentina violated the terms of the securities. Because we hold that the

9

No-Action Clause of the Global Security bars this suit, we do not reach those issues.

\* \* \*

We have considered the plaintiffs' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court